UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| SYDNEY BUDGE,<br><br>           Plaintiff(s),<br><br>v.<br><br>ANDREW SAUL,<br><br>           Defendant(s). | Case No.: 2:19-cv-01804-NJK<br><br>**ORDER** |

This case involves judicial review of administrative action by the Commissioner of Social Security ("Commissioner") denying Plaintiff's application for disability insurance benefits under Title XVI of the Social Security Act. Pending before the Court is Plaintiff's motion for reversal and/or remand. Docket No. 17. The Commissioner filed a response in opposition and a countermotion to affirm. Docket Nos. 18, 19. Plaintiff filed a reply. Docket No. 20. The Court has reviewed the parties' pleadings and the administrative record[1] filed by the Commissioner. Docket No. 16. For the following reasons, the Court finds that the Administrative Law Judge's ("ALJ") decision contains legal error that is not harmless. Accordingly, the Court **REVERSES** the Commissioner's decision and **REMANDS** this case for further administrative proceedings.

**I.   LEGAL STANDARDS**

   **A. Standard of Review**

The Court's review of administrative decisions in social security disability insurance benefits cases is governed by 42 U.S.C. § 405(g). *See Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002). Section 405(g) provides, "Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . brought in the district court of the United States for the judicial district in which the plaintiff resides." 42 U.S.C. § 405(g). The Court may enter, "upon the pleadings and transcript of the record, a judgment

---

[1] "AR" denotes citations to the administrative record.

1

affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." *Id.*

In reviewing the Commissioner's decision, the Court "must consider the [administrative] record as a whole, 'weighing both evidence that supports and evidence that detracts' from the Commissioner's conclusion." *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). The Court "may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error." *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997). "Substantial evidence means more than a scintilla but less than a preponderance." *Id.* Put differently, "Substantial evidence is relevant evidence which, considering the [administrative] record as a whole, a reasonable person might accept as adequate to support a conclusion." *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995).

The Court's "review of an ALJ's fact-finding for substantial evidence is deferential, and '[t]he threshold for such evidentiary sufficiency is not high.'" *Ford v. Saul*, 950 F.3d 1141, 1159 (9th Cir. 2020) (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)). Indeed, "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). To ensure that the Court does not speculate as to the basis of factual findings when determining whether substantial evidence supports the Commissioner's decision, the ALJ must make specific factual findings. *See Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991) ("The failure of ALJs to make specific findings in disability cases is among the principle causes of delay and uncertainty in this area of the law."). Thus, the ALJ's findings should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based. *See, e.g.*, *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990).

**B. Disability Evaluation Process**

A social security disability claimant bears the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, the claimant must demonstrate

the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Once the claimant establishes an inability to perform her prior work, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful work that exists in the national economy. *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998).

The ALJ follows a five-step sequential evaluation process in determining whether the claimant is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987) (citing 20 C.F.R. §§ 404.1520, 416.920). If at any step the ALJ makes a finding of disability or non-disability, a determination will be made, and no further evaluation is required. 20 C.F.R. § 416.920(a)(4). The first step requires the ALJ to determine whether the claimant is currently engaging in substantial gainful activity ("SGA"). 20 C.F.R. § 416.920(a)(4)(i). SGA is defined as work activity that is both substantial and gainful; it involves doing significant physical or mental activities usually for pay or profit. 20 C.F.R. § 416.972(a)-(b). If the claimant is currently engaging in SGA, then a finding of not disabled is made. 20 C.F.R. § 416.920(b). If the claimant is not engaging in SGA, then the analysis proceeds to the second step. *See* 20 C.F.R. § 416.920(a)(4).

The second step addresses whether the claimant has a "severe" medically determinable impairment or combination of impairments that significantly limit her from performing basic work activities. 20 C.F.R. § 416.920(a)(4)(ii). An impairment or combination of impairments is not severe when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on the claimant's ability to work. Social Security Rulings ("SSRs") 85-28 and 16-3p.[2] If the claimant does not have a severe medically determinable impairment or combination of impairments that significantly limit her from performing basic work activities, then a finding of not disabled is made. 20 C.F.R. § 416.920(c). If the claimant has a severe medically determinable impairment or combination of

---

[2] SSRs constitute the Social Security Administration's official interpretations of the statute it administers and its regulations. *See Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009). They are entitled to some deference if they are consistent with the Social Security Act and regulations. *Id.*

impairments that significantly limit her from performing basic work activities, then the analysis proceeds to the third step. *See* 20 C.F.R. § 416.920(a)(4).

The third step requires the ALJ to determine whether the claimant's impairment or combination of impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 416.920(a)(4)(iii). If the claimant's impairment or combination of impairments meet or equal the criteria of a listing and meet the duration requirement in 20 C.F.R. § 416.909, then a finding of disabled is made. 20 C.F.R. § 416.920(d). If the claimant's impairment or combination of impairments does not meet or equal the criteria of a listing or meet the duration requirement in 20 C.F.R. § 416.909, then the ALJ must assess the claimant's residual functional capacity ("RFC") before proceeding to step four of the sequential evaluation process. 20 C.F.R. § 416.920(e).

The RFC is a function-by-function assessment of the claimant's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments. SSR 96-8p. In making this finding, the ALJ must consider all severe and non-severe impairments, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the evidence in the record. 20 C.F.R. §§ 416.920(e), 416.945; *see also* SSR 16-3p. To the extent the claimant's statements about the intensity, persistence, or limiting effects of her pain or other impairments are not substantiated by objective medical evidence, the ALJ must determine the credibility of the claimant's statements based on a consideration of the entire case record. *See Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997), *as amended on reh'g* (Sept. 17, 1997).

After assessing the claimant's RFC, the fourth step requires the ALJ to determine whether the claimant has the RFC to perform her past relevant work ("PRW"). 20 C.F.R. § 416.920(a)(iv). PRW means work performed either as the claimant previously performed it or as it is generally performed in the national economy within the last fifteen years or fifteen years prior to the date that disability must be established. 20 C.F.R. § 416.960(b). In addition, the work must have lasted long enough for the claimant to learn the job and performed at SGA. 20 C.F.R. §§ 416.960(b), 416.965. If the claimant has the RFC to perform her past work, then a finding of not disabled is

made. 20 C.F.R. § 416.920(f). If the claimant is unable to perform or does not have any PRW, then the analysis proceeds to the fifth and final step. *See* 20 C.F.R. § 416.920(a)(4).

The fifth step requires the ALJ to determine whether the claimant can do any other work considering her RFC, age, education, and work experience. 20 C.F.R. § 416.920(a)(4)(v). If the claimant can do other work, then a finding of not disabled is made. 20 C.F.R. § 416.920(g). If the claimant cannot do other work, then a finding of disabled is made. *Id.* At this step, the burden shifts to the Commissioner, who must provide evidence demonstrating that other work the claimant can perform exists in significant numbers in the national economy. *Tackett*, 180 F.3d at 1099.

## II. BACKGROUND

### A. Plaintiff's Application

On September 9, 2014, Plaintiff filed an application for social security disability insurance benefits, alleging that she became disabled eighteen years earlier on the day she was born due to cognitive disorder, delayed motor skills, and schizophrenia. AR 29, 152, 302–303. The Commissioner denied Plaintiff's application on August 12, 2015, and again upon reconsideration on January 5, 2016. AR 162–163, 188–189. On March 8, 2016, Plaintiff filed a request for a hearing before an ALJ. AR 195–203.

On August 23, 2017, ALJ Gary L. Vanderhoof presided over Plaintiff's first hearing and heard testimony from Plaintiff and a vocational expert.[3] AR 120–151. At some point, Plaintiff's case was transferred to ALJ Norman L. Bennett. *See* AR 81, 84. On June 15, 2018, ALJ Bennett presided over Plaintiff's second hearing and heard testimony from Plaintiff, Plaintiff's mother, and a vocational expert. AR 81–119. Plaintiff was represented by counsel. *See* AR 81.

On September 7, 2018, the ALJ issued an unfavorable decision finding that Plaintiff had not been under a disability through the date of the decision. AR 20–30. On August 14, 2019, the ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review. AR 1–6.

---

[3] Vocational experts "are professionals under contract with [the Social Security Administration] to provide impartial testimony in agency proceedings." *Biestek*, 139 S. Ct. at 1152.

On October 15, 2019, Plaintiff commenced this action for judicial review. Docket No. 1.

**B. The Decision Below**

The ALJ's decision followed the five-step sequential disability evaluation process set forth in 20 C.F.R. § 416.920. AR 20–30. At step one, the ALJ found that Plaintiff had not engaged in SGA since September 9, 2014, the date of her application. AR 22. At step two, the ALJ found that Plaintiff suffers from two severe medical impairments that significantly limit her ability to perform basic work activities: tardive dyskinesia and cognitive disorder. AR 22. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR 22–24. The ALJ found that Plaintiff has the residual functional capacity to

> perform medium work as defined in 20 C.F.R. § 416.967(c) except she can lift/carry 50 pounds occasionally and 25 pounds frequently, can sit for 6 hours in an 8-hour workday, and stand/walk for 6 hours in an 8-hour workday. She can perform, simple repetitive tasks with a reasoning level of one to two and occasional contact with supervisors, co-workers, and the general public.

AR 24.

At step four, the ALJ found Plaintiff had no past relevant work given her lack of work history. AR 29. At step five, the ALJ found that jobs exist in significant numbers in the national economy that Plaintiff can perform based on her age, education, work experience, and residual functional capacity. AR 29. The ALJ's conclusion at step five relied on a vocational expert, who testified that "an individual with the claimant's age, education, work experience, and [RFC]" could perform work as a cleaner, laundry worker, or packer. AR 29–30. Thus, the ALJ determined that Plaintiff was not disabled from September 9, 2014, through the date of his decision. AR 20–30.

**III. ANALYSIS**

Plaintiff submits that the ALJ legally erred by failing to articulate clear and convincing reasons for discounting Plaintiff's testimony. Docket No. 17 at 9–11. The Commissioner submits that the ALJ provided legally sufficient reasons supported by substantial evidence for discounting Plaintiff's subjective symptom testimony. Docket No. 18 at 5–15. As discussed below, the Court

finds that the ALJ did not provide specific, clear, and convincing reasons for discounting Plaintiff's testimony.[4]

It is the ALJ's prerogative to "determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). Where the evidence draws into question the claimant's subjective testimony about her pain and symptoms, the ALJ must determine whether the claimant is credible. *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989). To evaluate the claimant's credibility, the ALJ must first determine whether the claimant presented objective medical evidence of an impairment that could reasonably be expected to produce some degree of pain or other symptoms alleged. *See* SSR 16-3p. If the claimant has presented objective medical evidence of an impairment, the ALJ must then determine whether the intensity and persistence of those symptoms limit a claimant's ability to perform work-related activities. *See id.* At step two, the ALJ must consider the entire case record, including the claimant's subjective testimony. *See id.*

In the absence of evidence of malingering, the ALJ may reject the claimant's subjective testimony only by giving "specific, clear, and convincing reasons." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). "This is not an easy requirement to meet: 'The clear and convincing standard is the most demanding required in Social Security cases.'" *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)). "General findings are insufficient; rather, the ALJ must identify *what* testimony is not credible and *what* evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995) (emphasis added). Factors in the record the ALJ may consider in evaluating the claimant's credibility include objective medical evidence, the claimant's daily activities and treatment history, inconsistencies in the claimant's testimony, the claimant's work record, and other factors concerning the claimant's functional limitations. *See Thomas*, 278 F.3d at 958–959; *Fair*, 885 F.2d at 603; *see also* SSR 16-3p.

---

[4] Plaintiff also submits that the ALJ legally erred because the ALJ failed to consider the testimony of Plaintiff's mother from the June 15, 2018 hearing. *See* Docket No. 17 at 18–20. The Court need not reach this argument given the finding above.

Plaintiff testified that her prescribed medications included Clozapine, Levothyroxine, Metformin, and Abilify. AR 92. She testified that she did not have a driver's license because she had slow "motor skills," which interfered with her ability to multitask at work. AR 89, 93. Plaintiff testified that she suffers from tardive dyskinesia,[5] an illness that "makes [her] hand movement really slow." AR 96. According to Plaintiff, she may be able to do "one or two things at . . . once" while working. AR 93. Plaintiff further testified that her tardive dyskinesia was improving, allowing her to lift no more than twenty pounds. AR 98.

As for her employment history, Plaintiff testified that she previously worked at Goodwill, where she placed clothes on racks. AR 90, 97–98. When asked to describe her job performance at Goodwill, Plaintiff responded, "I didn't do very well." AR 98. She explained that she worked by herself "completely" and thought "they wanted [her] to go like really fast so it didn't go well because of that." AR 98 According to Plaintiff, she then secured work at Jason's Deli through a local non-profit organization. AR 98. There, Plaintiff prepared food and worked thirty-five hours per week for approximately one year. AR 99. She testified that her time at Jason's Deli "was good" and that she had a job coach, whom she believed would also say she "was doing good." AR 98–99. In addition, Plaintiff testified that, at the time of the hearing, she worked and "help[ed] prepare food[.]" AR 90. She testified that she worked fifteen hours per week and had a job coach for four months. AR 99–101. Plaintiff testified that her boss asked her to work faster "a few times in a week." AR 101. Plaintiff further testified that she believed she could work full-time and intended to find a job with more hours. AR 92, 94. In Plaintiff's words, "I'm actually thinking about doing—working at a library because I love books." AR 95.

Here, the ALJ determined that Plaintiff presented objective medical evidence of cognitive disorder, delayed motor skills, and schizophrenia—medical impairments that could reasonably be expected to produce the symptoms she alleged. AR 24. However, the ALJ found that the evidence in the record did not support Plaintiff's testimony regarding the intensity, persistence, and limiting

---

[5] "Tardive dyskinesia is a neurological disorder, irreversible in some cases, that is characterized by involuntary, uncontrollable movements of various muscles, especially around the face." *United States v. Williams*, 356 F.3d 1045, 1054 (9th Cir. 2004) (quoting *Washington v. Harper*, 494 U.S. 210, 230 (1990)).

effects of her symptoms. AR 24. In other words, the ALJ discounted the credibility of Plaintiff's testimony regarding the intensity, persistence, and limiting effects of her symptoms. As no evidence of malingering exists in the record, the ALJ was required to provide specific, clear, and convincing reasons for rejecting Plaintiff's testimony.

Plaintiff testified that she did not perform well while working at Goodwill without a job coach.[6] AR 97–98. An assessment of Plaintiff's work at Goodwill by the Department of Employment Training and Rehabilitation confirmed that her "productivity was lower than expected from a typical employee." AR 454. For example, on August 7, 2013, Plaintiff "completed one rack of 100 pieces of clothing in 3 hours. The average employee can complete 3-4 racks in 3 hours." AR 454. On August 8, 2013, although Plaintiff "was able to complete her rack faster than the previous day[,] she was unable to complete the rack within the 70 minutes. [Plaintiff] completed the rack in 2 hours." AR 454. By contrast, Plaintiff testified that she worked thirty-five hours per week at Jason's Deli with the help of a job coach. AR 99. Plaintiff also testified that she performed well at Jason's Deli and believed her job coach would commend her for her performance. AR 99. As the ALJ observed, training reports during this time "were satisfactory, above average, and exceeding expectations." AR 26, 912–916. The significance of a job coach in Plaintiff's work performance is further demonstrated by her testimony that she had a job coach for four months at her current place of employment. AR 100. She testified that, without a job coach, she now works fifteen hours per week and that her boss tells her to work faster a few times a week, albeit encouragingly. AR 101. In sum, Plaintiff's testimony establishes a clear distinction between her work with and without a job coach and suggests that she can work longer hours and perform better with the help of a job coach.[7]

---

[6] At the August 23, 2017 hearing, Plaintiff testified that she did have a job coach while working at Goodwill. AR 141. To be sure, Plaintiff contradicted herself as to whether she had a job coach while employed at Goodwill. Although it is the ALJ's prerogative to "resolve conflicts in the testimony," *Treichler*, 775 F.3d at 1098, the ALJ in this case failed to address Plaintiff's testimony at either hearing. As a result, the Court does not consider Plaintiff's contradictory testimony in issuing this order. In its reviewing capacity, the Court is indeed "constrained to review the reasons the ALJ asserts." *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003).

[7] At the August 23, 2017 hearing, Plaintiff testified as follows: "Well, with my condition sometimes I'll forget things so that's why I have to work with like a job coach." AR 136.

The ALJ, however, relied exclusively on his summary and interpretation of the documents in the record to discount Plaintiff's testimony. *See* AR 24–29. These documents included Plaintiff's treatment records, Plaintiff's psychological examinations, a statement from Plaintiff's parents, an assessment of Plaintiff's work performance in the form of six job training reports over an eight-month period, and notes from Disability Determination Services physicians and psychologists. AR 24–29. Based on this evidence, the ALJ determined that Plaintiff's "alleged disabling symptoms were not consistent with the longitudinal medical evidence." AR 28. The ALJ further found that, "[d]espite allegations of psychological limitations, the objective findings did not support the presence of a medically determinable impairment that could be expected to cause symptoms of the type and severity that [Plaintiff] alleged." AR 28. "In fact," the ALJ found, "there was no objective medical evidence that would support limitations such as those argued for by the claimant." AR 28. According to the ALJ, Plaintiff "had many subjective complaints without corresponding objective findings to support them." AR 28. Although he noted that "the [RFC] adequately considered and evaluated all of her alleged symptoms, thereby giving her the maximum benefit of the doubt[,]" the ALJ neither summarized nor addressed any specific portion of Plaintiff's testimony in evaluating her credibility to assess her RFC. AR 28.

The ALJ's vague and conclusory statements purporting to reject Plaintiff's testimony exemplify precisely what the Ninth Circuit has instructed against. In *Brown-Hunter v. Colvin*, 806 F.3d 487, 489 (9th Cir. 2015), the Ninth Circuit held "that an ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her [RFC] determination." To ensure meaningful review, an ALJ must "specify *which* testimony she finds not credible, and then provide clear and convincing reasons, supported by evidence in the record, to support that credibility determination." *Id.* (emphasis added); *see also Holohan*, 246 F.3d at 1208 ("[T]he ALJ must *specifically* identify the testimony she or he finds not to be credible and must explain *what* evidence undermines the testimony.") (emphasis added). As there was no evidence of malingering, it was imperative for the ALJ in this case to cite specific evidence in the record to undermine Plaintiff's testimony clearly and convincingly, including her specific subjective contentions about her work history and

10

job performance with and without a job coach. The ALJ did not do so and, therefore, committed legal error that "precludes [the Court] from conducting a meaningful review of the ALJ's reasoning." *Brown-Hunter*, 806 F.3d at 489. Consequently, the Court finds that the ALJ's legal error was not harmless. *See id.*

## IV. APPROPRIATE RELIEF

The Court turns to the appropriate relief in this case. Upon finding that an ALJ committed harmful error, the Ninth Circuit has made clear that "the proper course, except in rare circumstances, is to remand to the agency for additional investigation." *Treichler*, 775 F.3d at 1099. A court may instead remand for an award of benefits when several conditions are met, including that the record has been fully developed and further administrative proceedings would serve no useful purpose. *See id.* at 1101.

Plaintiff here simply asks for an award of benefits without providing meaningfully-developed argument as to why such relief is warranted. *See* Docket No. 17 at 18, 20–21. Moreover, the Court cannot say that further administrative proceedings would serve no useful purpose, especially given the need for consideration of the evidence identified above and the testimony of the lay witness. It remains to be seen whether a finding can properly be made that Plaintiff is not disabled, but the Court is not persuaded that the record is fully developed or that further proceedings would serve no useful purpose.

Given the circumstances, the appropriate relief is to remand to the ALJ for further proceedings consistent with this order.

## V. CONCLUSION

Accordingly, the Court **GRANTS** Plaintiff's motion for reversal and/or remand, Docket No. 17, and **DENIES** the Commissioner's countermotion to affirm. Docket No. 18. The case is hereby remanded for further proceedings consistent with this order. The Clerk's Office is instructed to **ENTER FINAL JUDGMENT** and to **CLOSE** this case.

Dated: September 23, 2020

_____
Nancy J. Koppe
United States Magistrate Judge